IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REGENT GODDARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-922 (MN) |
| | ) | |
| CENTURION OF DELAWARE, LLC and | ) | |
| DR. EMILIA ADAH, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

Daniel A. Griffith, WHITEFORD, TAYLOR & PRESTON, LLC, Wilmington, DE – Attorney for Plaintiff

Dawn C. Doherty, Brett T. Norton, MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C. – Attorneys for Defendants

March 25, 2025
Wilmington, Delaware

TENNYSON, U.S. MAGISTRATE JUDGE:

Presently before the Court is the motion (D.I. 53) of Defendants Dr. Emilia Adah and Centurion of Delaware, LLC ("Centurion") (collectively, "Defendants") to dismiss the Second Amended Complaint (D.I. 32) for failure to state a claim on the grounds that Plaintiff Regent Goddard ("Plaintiff" or "Mr. Goddard") does not plausibly allege a claim of deliberate indifference to a serious medical need against Dr. Adah or against Centurion. Defendants also seek dismissal on the grounds that Plaintiff has failed to plead recoverable damages and failed to exhaust his administrative remedies. For the reasons set forth below, Defendants' motion is DENIED.[1]

## I.    BACKGROUND

Plaintiff is an inmate at James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, and he has been incarcerated there for "several years." (D.I. 32 ¶¶ 3 & 6). Centurion is a wholly owned subsidiary of Centene Corporation, a Delaware corporation. (*Id.* ¶ 4). Centurion contracted with the Delaware Department of Corrections to provide medical services to Delaware prisons and inmates from April 1, 2020 to June 20, 2023. (*Id.*). Dr. Emilia Adah, M.D. ("Dr. Adah") is a physician that provided medical services to inmates at JTVCC. (*Id.* ¶ 5).[2]

Plaintiff appears to suffer from a number of medical conditions, including "chronic back pain, chronic neck pain, chronic knee pain, sternum pain, a hernia, hand pain due to arthritis, splenomegaly, GERD, hypertension, hyperlipidemia, diabetes, a lung lobe nodule, a large lymph node on his left pelvic bone, and basal cell carcinoma and cancer." (D.I. 32 ¶ 6).

---

[1]    The parties have consented to the oversigned's jurisdiction to decide the present dispositive motion under 28 U.S.C. § 636(c). (*See* D.I. 58).

[2]    Although not entirely clear, it appears that Dr. Adah no longer provides medical services at JTVCC. (*Compare* D.I. 54 at 7 (Defendants' opening brief asserting that "Dr. Adah voluntarily left employment with Centurion on April 1, 2022"), *with* D.I. 55 at 8 & 15 n.11 (Plaintiff's answering brief claiming that Dr. Adah was the provider at "all relevant times" but conceding that Dr. Adah and Centurion "are no longer at [JTVCC]")).

In February 2020, Plaintiff was diagnosed with basal cell carcinoma.  (D.I. 32 ¶ 7).  After a delay of over five months, Plaintiff was seen by Dr. Bank on or about July 31, 2020, and he underwent cancer surgery in late August 2020.  (*Id.*).  Following surgery, Plaintiff was examined by Dr. Adah, who allegedly refused to provide Plaintiff with wound care or pain medication.  (*Id.* ¶ 8).  Then, on or around September 1, 2020, Plaintiff's face "became swollen" and "blood and other bodily fluids" began to come out of his wound.  (*Id.* ¶ 10).  According to Plaintiff, despite being in extreme discomfort, he was not given antibiotics until around September 18, 2020 or wound care until around September 28, 2020.  (*Id.* ¶¶ 10 & 12-13).

Plaintiff also alleges that Defendants ignored another grave medical condition.  Plaintiff claims that, in November 2022, he began experiencing pain and bleeding from his rectum but, despite repeated requests for care, was not seen by any Centurion medical staff until December 1, 2022.  (D.I. 32 ¶ 14).  At that point, Plaintiff was taken to the emergency room and informed that he had stage IV cancer.  (*Id.*).  He was also told that his condition required emergency surgery.  (*Id.*).  Plaintiff was returned to JTVCC without receiving the surgery and he continued to experience rectal pain and bleeding.  (*Id.* ¶ 15).[3]  Several months later, in early March 2023, Plaintiff was informed by Bayhealth Hospital (through Centurion) that he needed to undergo a PET scan.  (*Id.* ¶ 16).  Plaintiff alleges that he was forced to file "numerous" grievances to obtain the PET scan, which ultimately was performed on or around April 14, 2023.  (*Id.* ¶ 17).  Plaintiff began receiving chemotherapy in May 2023.  (*Id.* ¶ 18).

Plaintiff also alleges other examples of Centurion purportedly denying him necessary care over the years.  For example, Centurion allegedly (1) reduced Plaintiff's Lyrica pain medication and ultimately stopped it (D.I. 32 ¶ 23), (2) denied Plaintiff a medical mattress that was prescribed

---

[3]     There is no indication that Plaintiff has received that surgery as of the date of this Opinion.

for his severe pain (*id.* ¶ 24), (3) repeatedly allowed Plaintiff to run out of his daily medications despite Plaintiff's attempts to avoid shortages (*id.* ¶ 25) and (4) denied Plaintiff necessary medical gear (*e.g.*, knee braces, etc.) for his various conditions (*id.* ¶ 26). Additionally, Plaintiff claims that he has missed necessary annual examinations and is in constant pain, "despite indications that Plaintiff would benefit from injections and/or surgery" that Centurion has failed to provide. (*Id.* ¶¶ 27-28). In Plaintiff's view, the foregoing evidences a Centurion "custom and policy" of delaying and denying medical care in order to maximize profit. (*Id.* ¶ 19).

Plaintiff filed his original *pro se* Complaint on July 11, 2022, claiming that the current Defendants (and several others no longer at issue) had been deliberately indifferent to his medical needs. (*See* D.I. 3). After Plaintiff was granted permission to proceed *in forma pauperis*, Judge Andrews screened the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) and found that Plaintiff did not state any cognizable claim. (D.I. 9 at 6). The original Complaint was dismissed with leave to amend (*id.* at 7), and Plaintiff filed his First Amended Complaint on December 5, 2022 (D.I. 11). Over the next several months, Plaintiff sent numerous letters to the court with details of new allegations. (*See* D.I. 15, 16, 18, 20, 22 & 24). On June 20, 2023, Plaintiff's amended pleading was screened again, and Judge Andrews found cognizable and non-frivolous claims against Defendants Centurion and Dr. Adah. (D.I. 27 ¶ 3). By the same order, Judge Andrews dismissed the claims against the other named defendants (*id.* ¶ 3) and gave Plaintiff the option of filing either a superseding further amended complaint or a new case to address the additional allegations contained in Plaintiff's various letters (*id.* ¶¶ 6, 7). Plaintiff then retained counsel (D.I. 29) and filed the Second Amended Complaint (D.I. 32 & 35), which asserts a claim of deliberate indifference to a serious medical need against Dr. Adah (or other personnel) under 42 U.S.C. § 1983 and the Eighth Amendment, as well as a *Monell* claim against Centurion for

unconstitutional policies and customs under § 1983 and the Eighth Amendment. Plaintiff seeks compensatory damages and injunctive relief. (D.I. 32 at 7 (Prayer for Relief)).

On May 6, 2024, Defendants filed the present motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff fails to adequately allege that Dr. Adah was deliberately indifferent to Plaintiff's serious medical needs or that Centurion implemented a "custom and policy" of disregarding serious medical needs. (*See* D.I. 53).[4] Briefing was complete on May 31, 2024. (D.I. 54, 55 & 56).

## II.  LEGAL STANDARDS

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). The Court is not, however, required to accept as true bald assertions, unsupported conclusions or unwarranted inferences. *See Mason v. Delaware (J.P. Court)*, No. 15-1191-LPS, 2018 WL 4404067, at *3 (D. Del. Sept. 17, 2018); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This plausibility standard obligates a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the pleadings must provide sufficient factual

---

[4]     On January 10, 2024, Defendants filed a motion to dismiss under Rule 12(b)(6) that was denied without prejudice on procedural grounds. (*See* D.I. 52). The present motion is a renewed version of that motion in compliance with the District of Delaware Local Rules.

allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 506 U.S. at 678. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (cleaned up).

## III.    DISCUSSION

In support of their motion to dismiss, Defendants argue that Plaintiff (1) fails to state a claim of deliberate indifference against Dr. Adah, (2) fails to state a claim of deliberate indifference against unidentified Centurion personnel, (3) fails to state a *Monell* claim against Centurion and (4) fails to plead recoverable damages. (*See* D.I. 54 at 5-16). Defendants also argue that Plaintiff failed to exhaust all administrative remedies available to him prior to filing suit. (*Id.* at 16-17). Before turning to the specific grounds for dismissal raised in Defendants' motion, the Court first addresses two threshold issues: whether Defendants' motion is moot based on the screening of an earlier version of the complaint and whether the Court should rely on exhibits only attached the earlier pleading. (D.I. 55 at 9-10).

### A.    Plaintiff's Reliance on Previous Screening

As explained above, Plaintiff's First Amended Complaint was screened pursuant to §§ 1915(e)(2)(B) and 1915A(b). (*See generally* D.I. 27). Judge Andrews identified claims in that pleading that would be allowed to proceed against Defendants. (*Id.* ¶ 3). But because Plaintiff had raised new accusations in "numerous letters and filings" since the First Amended Complaint, Judge Andrews gave Plaintiff the option of proceeding with the screened claims of the First Amended Complaint or filing a superseding further amended complaint, the latter of which would need to be screened again. (*Id.* ¶¶ 4, 6-7). Plaintiff chose the latter. (*See* D.I. 32).

In Plaintiff's view, that the First Amended Complaint was screened and the case allowed to proceed moots Defendants' motion to dismiss. (D.I. 55 at 9-10). The Court disagrees. Although the legal standard for dismissing a complaint under the screening procedures of §§ 1915(e)(2) is "identical" to the standard used for Rule 12(b)(6) motions, Plaintiff has filed a new pleading. *See Szubielski v. Pierce*, 152 F. Supp. 3d 227, 231 (D. Del. 2016) ("The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions."); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). "In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019).

Because the Second Amended Complaint adds new allegations to and supersedes the First Amended Complaint, Plaintiff cannot rely solely on the prior screening of his claims to defeat Defendants' motion to dismiss. The Court must address the substance of Defendant's motion.

## B.    Exhibits Only Attached to Prior Pleadings

Throughout their briefing, Defendants attempt to rely on exhibits that Plaintiff attached to previous pleadings, but which are not attached to the Second Amended Complaint. In ruling on a motion to dismiss, a court generally "relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (court may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice . . . [and] items appearing in the record of the case"). The question here is whether, in ruling on a motion to dismiss under Rule 12(b)(6), the Court may rely on exhibits attached to previous complaints but omitted from the operative pleading. The Court ultimately decides not to do so here.

The exhibits in question are apparently grievances that Plaintiff filed with JVTCC alleging inadequate care for his various medical needs, including several medical needs at issue in this case. Those exhibits were attached to Plaintiff's original Complaint (D.I. 3, Ex. 1) and his First Amended Complaint (D.I. 11, Ex. 1). But the filing of Plaintiff's Second Amended Complaint superseded all prior pleadings, rendering those pleadings (and exhibits attached thereto) a nullity. *See Garrett*, 938 F.3d at 82. The exhibits were not attached to or incorporated by reference into the Second Amended Complaint. Although some of the grievances were mentioned in the Second Amended Complaint, they were only mentioned in a cursory fashion and without any reliance on their contents. (*See, e.g.*, D.I. 32 ¶ 9). The Court is not required to consider the prior pleading's exhibits or accept anything therein as true for purposes of Defendants' motion to dismiss.[5]

The Court will thus decide the motion to dismiss without considering the exhibits attached to Plaintiff's prior pleadings. Against this background, the Court now turns to whether Plaintiff has adequately pleaded deliberate indifference claims in the Second Amended Complaint.

### C.  Deliberate Indifference to a Serious Medical Need

The Eighth Amendment's prohibition on cruel and unusual punishment obligates prison officials to provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976); *see also id.* at 105 ("[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."). To state a claim of deliberate indifference, a plaintiff must plausibly allege (1) that prison officials were deliberately indifferent to plaintiff's medical needs and (2) that those medical needs were serious. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). "A prison official is deliberately indifferent if he knows that a prisoner faces

---

[5]    The Court is also not persuaded that the exhibits should be considered at this stage as items "appearing in the record of the case." *Buck*, 452 F.3d at 260.

a substantial risk of serious harm and fails to take reasonable steps to avoid the harm." *Giles v. Kearney*, 516 F. Supp. 2d 362, 369 (D. Del. 2007) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)), *aff'd*, 571 F.3d 318 (3d Cir. 2009). The deliberate indifference standard is high, requiring more than "allegations of malpractice" or a "disagreement as to the proper medical treatment." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). To demonstrate that a prison official was deliberately indifferent, a plaintiff must plausibly allege that prison officials knew of and "reckless[ly] disregarded a substantial risk of serious harm." *Stuart v. Pierce*, 587 F. Supp. 3d 127, 137 (D. Del. 2022) (Restrepo, J. sitting by designation) (alteration in original). Deliberate indifference may be shown by acts or omissions. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). Intentional denial of or delayed access to necessary medical care may evidence deliberate indifference. *See Estelle*, 429 U.S. at 104-05; *see also Lanzaro*, 834 F.2d at 346 (delay of necessary medical treatment for non-medical reasons is sufficient to state a claim of deliberate indifference). Intentional interference with treatment that an inmate is prescribed may also constitute deliberate indifference. *Estelle*, 429 U.S. at 105.

### 1.    § 1983 Claim Against Dr. Adah

Defendants argue that Plaintiff has failed to plausibly allege that Dr. Adah was deliberately indifferent to Plaintiff's wound care and management. (D.I. 54 at 6-7).[6] Defendants do not seem to contest that post-operative care is a serious medical need, or that the delay or denial or post-operative care may constitute deliberate indifference. Defendants instead maintain that Plaintiff's grievances – attached to previous complaints – demonstrate that Dr. Adah did provide adequate

---

[6]    Plaintiff's deliberate indifference claim as to Dr. Adah appears limited to the post-operative wound care. (*Compare* D.I. 56 at 4 ("This represents the sole allegation of deliberate indifference to a serious medical need directed specifically at Dr. Adah."), *with* D.I. 55 at 12 (Plaintiff's brief limiting discussion for Dr. Adah claim to wound care)).

post-operative wound care. (D.I. 54 at 6-7; *see also* D.I. 56 at 4-5). As previously discussed, on this motion to dismiss, the Court is not considering exhibits attached to previous complaints.

Turning to the specific allegations in the Second Amended Complaint, Plaintiff was diagnosed with basal cell carcinoma and underwent cancer surgery in late August 2020. (D.I. 32 ¶ 7). Following surgery, he was examined by Dr. Adah, who allegedly refused to provide wound care or pain medication without proper examination. (*Id.* ¶ 8). Then, on or around September 1, 2020, Plaintiff's face "became swollen" and "blood and other bodily fluids" began to come out of his wound. (*Id.* ¶ 10). Plaintiff further alleges that, despite being in extreme discomfort, he was not given antibiotics until around September 18, 2020 or wound care until around September 28, 2020. (*Id.* ¶¶ 10 & 12-13). Cancer is a serious medical condition, and an infected post-operative wound may constitute a serious medical need. It is reasonable to infer that follow-up care would be required. Plaintiff's claim as to Dr. Adah is that she unjustifiably denied or delayed such follow-up care despite Plaintiff's serious medical need. Accepting these allegations as true, Plaintiff has plausibly alleged a deliberate indifference claim against Dr. Adah under *Twombly* and *Iqbal*.

2.     § 1983 Claim Against Unidentified Personnel

Defendants also argue that any allegations against unidentified Centurion personnel being deliberately indifferent to Plaintiff's serious medical needs must be dismissed. (D.I. 54 at 7-9).[7] Plaintiff largely ignores this argument, generically responding that his pleading "describes in detail how Centurion has been deliberately indifferent to his serious medical needs throughout his incarceration." (D.I. 55 at 13). Having reviewed the allegations contained in the Second Amended Complaint, the Court will construe any such claims against unidentified Centurion personnel to be

---

[7]     Both sides seem to agree that conduct surrounding Plaintiff's cancer diagnosis cannot give rise to claims against Dr. Adah because she had left Centurion's employment by that time.

part of Plaintiff's *Monell* claim against Centurion, the entity. *Cf. Parkell v. Danberg*, 833 F.3d 313, 338 (3d Cir. 2016) ("[T]o succeed in his [*Monell*] claim against CMS and CCS for violating the Eighth Amendment, Parkell need not name particular CMS or CCS employees who were deliberately indifferent, as long as a factfinder could conclude that some CMS or CCS employee was deliberately indifferent and the deliberate indifference can be attributed to CMS or CCS.").

### 3. *Monell* Claim Against Centurion

Defendants argue that Plaintiff has failed to plausibly allege that Centurion was deliberately indifferent to Plaintiff's serious medical needs. (D.I. 54 at 6-7). At all times relevant, Centurion was contracted to provide medical services at JTVCC. (D.I. 32 ¶ 4). Contracted medical service providers at state prisons may be subject to § 1983 liability as if a government entity. *See Natale*, 318 F.3d at 583-84. But such entities may not be held liable for the acts of employees under a theory of *respondeat superior* or vicarious liability. *Id.* at 583. Instead, for a § 1983 claim to proceed against the entity, a plaintiff must establish that a constitutional right has been violated and that the violation stemmed from the government entity's policy or custom. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *see also Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). A policy is made when someone with "final authority to establish . . . policy with respect to the action issues a final proclamation, policy or edict." *Natale*, 318 F.3d at 584 (cleaned up); *see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403-04 (1997) ("Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to

constitute law." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (cleaned up). In asserting a § 1983 claim against a government entity, a plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

Here, Plaintiff alleges that Centurion had a "custom and policy of delaying and denying medications, medical devices and medical treatment" in order to ensure "profits are maximized." (D.I. 32 ¶ 19).[8] Defendants maintain that factoring in cost when deciding whether to provide medical care is not sufficient to support a *Monell* claim. (D.I. 54 at 9-11). But Plaintiff alleges more. Plaintiff claims that Centurion implemented a "custom or policy" of systemically delaying or denying necessary medical care (*e.g.*, medications and prescribed treatment) in order to maximize profits. (D.I. 32 ¶¶ 19 & 29). Plaintiff also alleges that, as applied to him, this custom or policy resulted in disruptions to his medications (*id.* ¶¶ 23 & 25), a delay in transportation to the emergency room once he began experiencing "extreme pain and bleeding from his rectum" (*id.* ¶¶ 14 & 20), a delay in receiving chemotherapy (*id.* ¶ 18), a refusal to "order necessary medical gear" (*id.* ¶¶ 24 & 26) and a failure to provide necessary surgery (*id.* ¶¶ 15 & 28). Construing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has plausibly alleged a custom or policy of Centurion to delay or deny necessary medical care for monetary reasons.[9]

---

[8]    Defendants are correct that Plaintiff seemingly attributes to Centurion actions that occurred before Centurion was the medical provider at JTVCC. (D.I. 54 at 10; *see also* D.I. 32 ¶ 23). At the same time, the Second Amended Complaint specifically alleges that Centurion was "contracted with the Department of Corrections Commissioner to provide healthcare in Delaware prisons from April 1, 2020 until June 30, 2023." (D.I. 32 ¶ 4). The Court thus understands the claim against Centurion to be limited to conduct in this time period.

[9]    Defendants continue to urge the Court to dismiss the claim as to Centurion because exhibits attached to previous complaints purportedly contradict Plaintiff's allegations. In fact, Defendants' primary argument is that these exhibits allegedly completely refute Plaintiff's claims and therefore mandate dismissal. As explained above, the Court is not considering these exhibits in ruling on the motion to dismiss.

"[P]risoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment." *Winslow v. Prison Health Servs.*, 406 F. App'x 671, 674 (3d Cir. 2011). But medical providers may not "simply resort to an easier course of treatment that they know is ineffective." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). The Second Amended Complaint sets forth a delay or complete denial of medical care – *e.g.*, medically necessary equipment or treatment – based solely on Centurion's alleged policy or custom of maximizing its own profits. (*See, e.g.*, D.I. 32 ¶¶ 24 & 26). Discovery may ultimately show that Centurion's reasons for delaying and denying Plaintiff's medical care were not due to an impermissible custom or policy of maximizing profits. At this juncture, however, Plaintiff has plausibly alleged sufficient factual support to state a *Monell* claim against Centurion. *See Samuel v. Centene Corp.*, No. 23-1134-JLH-SRF, 2024 WL 3552869, at *6 (D. Del. July 26, 2024) (Plaintiff plausibly stated a claim under § 1983 where complaint alleged that "Centurion had a policy and custom of maximizing profits by delaying and denying diagnostic testing, withholding prescribed medications, withholding surgeries and other needed treatments, and systemically understaffing and failing to supervise medical staff"), *report and recommendation adopted sub nom. Desmond v. Centene Corp.*, 2024 WL 4315028 (D. Del. Sept. 27, 2024).

### D.     Failure to Plead Recoverable Damages

Plaintiff seeks damages for his physical injuries, as well as for his mental anguish and emotional distress. (D.I. 32 at 7 (Prayer for Relief)). "The PLRA [Prison Litigation Reform Act] . . . restricts a prisoner's ability to recover compensatory damages for solely mental or emotional injuries." *Michtavi v. United States*, 345 F. App'x 727, 730 (3d Cir. 2009) (citing 42 U.S.C. § 1997e(e); *Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003)). To prevail on any claim for a mental or emotional injury, a prisoner must first show an accompanying physical injury. *Mitchell*,

318 F.3d at 533.  Additionally, the Third Circuit has held that § 1997e(e) requires "more than a *de minimis* physical injury before an emotional injury may be alleged."  *Id.*  Therefore, to succeed on his claim, Plaintiff must plead at a minimum a physical injury upon which his emotional and mental injuries stem.  Defendants argue that Plaintiff has failed to do so.  (D.I. 54 at 15-16).  The Court disagrees.

As set forth above, Plaintiff specifically alleges that he was refused wound care and pain medication following his cancer surgery, that his face was swollen, that blood and other fluids were coming out of his open wound and that he was experiencing rectal pain and bleeding, all while his treatment was allegedly being delayed for non-medical reasons.  (D.I. 32 ¶¶ 8, 10, 14).  The Court finds that these are physical injuries that rise above a *de minimis* level.  Defendants assert that Plaintiff's exhibits, attached to previous complaints, disprove these allegations.  (D.I. 56 at 7).  As discussed above, however, the Court declines to consider the prior pleading's exhibits.

Therefore, the Court finds that Plaintiff has pled a physical injury, rising above a *de minimis* level, and that he has therefore pled recoverable damages.  And because Plaintiff concedes that "injunctive relief would be impossible" in this case given that both Dr. Adah and Centurion are no longer providing services at JTVCC (D.I. 55 at 15 n.11), the claims proceeding in this case are limited to money damages.

### E.    Failure to Exhaust Administrative Remedies

Defendants argue that Plaintiff's claims should be dismissed because he failed to show that he exhaustive his administrative remedies before filing this case.  (D.I. 54 at 16).  "The PLRA requires a prisoner to exhaust available administrative remedies before bringing an action regarding prison conditions."  *Williams v. Delaware Cnty. Bd. of Prison Inspectors*, 844 F. App'x 469, 474 (3d Cir. 2021) (citing 42 U.S.C. § 1997e(a); *Small v. Camden Cnty.*, 728 F.3d 265, 268

(3d Cir. 2013)). "Under § 1997e(a), a prisoner must properly exhaust such remedies by complying with the prison grievance system's procedural rules." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 93-95 (2006); *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004)). Despite being a pre-requisite to filing suit, "[f]ailure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." *Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013). "[If] a prisoner's failure to exhaust under the PLRA is 'apparent from the face of the complaint,' a district court may dismiss it on that basis." *Talley v. Clark*, 111 F.4th 255, 264 (3d Cir. 2024) (quoting *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002)).

As Defendants point out, Plaintiff only pled that he filed numerous grievances (D.I. 32 ¶¶ 7, 9, 17 & 24) and that one was returned as unprocessed (*id.* ¶ 11). He did not plead anywhere in the Second Amended Complaint that he exhausted his available administrative remedies. But Plaintiff is not required to do so. *See Small*, 728 F.3d at 268. For Defendants to prevail now – on a motion to dismiss – on their affirmative defense of failure to exhaust administrative remedies, Plaintiff's own pleading must make clear that that affirmative defense would succeed. *See Jones*, 549 U.S. at 215 ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground . . . ."). It does not. Plaintiff has pled no facts to show that he failed to exhaust his administrative remedies. Dismissal is not appropriate here.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (D.I. 53) is DENIED.